**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DIVISION**

IN RE

DANIEL R. WITHAM                                                              CASE NO. 17-20703
MINNIE MARIE WITHAM                                                                  CHAPTER 7

DEBTORS

## MEMORANDUM OPINION

This matter is before the Court on Debtors' Motion [ECF No. 17] (the "Motion") seeking entry of an order pursuant to § 362(k)[1] holding creditor Vivid Tan in contempt for willfully violating the automatic stay and awarding Debtors actual damages, including costs and attorney's fees, and punitive damages.  An evidentiary hearing was held on September 12, 2017. The Court having reviewed the record and being otherwise sufficiently advised, makes the following findings of facts and conclusions of law.

Prior to filing this bankruptcy case, Debtor Minnie Marie Witham ("Ms. Witham") entered into a prepetition agreement with Vivid Tan under which Ms. Witham could use tanning beds at Vivid Tan's salon in exchange for a monthly payment of $81.95 charged to her debit card.  Ms. Witham was allowed to cancel the agreement upon 30 days' notice after the first three months.  In January 2017, more than three months after she entered into the agreement, Ms. Witham attempted to cancel it.  Vivid Tan instructed that cancellation would not be effective for 30 days and offered to let her "freeze" her account instead.  Ms. Witham agreed to "freeze" her account in exchange for paying $5 per month.  Vivid Tan did not charge Ms. Witham in January or February 2017.  In March 2017, it charged her debit card approximately $100.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

On May 19, 2017, Debtors filed a voluntary chapter 7 bankruptcy petition, along with accompanying schedules and creditor mailing matrix. Schedule E/F lists Vivid Tan as an unsecured creditor with a $700.00 claim against Ms. Witham on account of "Monies Loaned / Advanced." Vivid Tan is listed on Debtors' mailing matrix with an address of P.O. Box 665, Florence, KY 41042. On May 24, 2017, the Bankruptcy Noticing Center sent the Notice of Chapter 7 Bankruptcy Case containing the date and time of Debtors' first meeting of creditors to Vivid Tan via first-class mail to the address on Debtors' mailing matrix. The meeting of creditors was continued, and Debtors sent notice of the continued date to Vivid Tan via regular U.S. mail to that same address on May 23, 2017.

Almost two months after the bankruptcy filing, on July 5, 2017, Vivid Tan initiated two debit card transactions deducting $81.95 each from Debtors' bank account. Ms. Witham telephoned Vivid Tan's Cold Spring, Kentucky location that same day and asked to speak to a manager, but she was advised that the manager was out that day. Ms. Witham called the Cold Spring location again on July 6, 2017, and spoke with the manager, "Megan." Ms. Witham advised Megan of her bankruptcy filing, but Megan refused to refund the money and stated that Vivid Tan would continue to attempt to debit her account as long as she owed money. Megan refused to provide contact information for Vivid Tan's billing company but stated that she would contact them and get back with Ms. Witham. Megan also refused to provide contact information for the store owner, stating that mangers were responsible for issues like this. Ms. Witham never spoke to Megan again.

Ms. Witham also attempted to telephone Vivid Tan's corporate offices twice on July 5, 2017, and twice on July 6, 2017, each time only reaching a voicemail. She left two voicemail messages, each advising of her bankruptcy filing, offering her attorney's contact information,

2

and advising that Vivid Tan should not be taking money from her account during the bankruptcy. Vivid Tan's corporate office did not respond until July 13, 2017, when Ms. Witham missed a call from "Tracy," called back, and left a voicemail message. Tracy called Ms. Witham again on July 20, 2017. Tracy told her that because Vivid Tan was not notified of Debtors' bankruptcy until July 17, 2017, it did not have to refund the money debited from her account prior to that time. Ms. Witham did not speak with anyone at Vivid Tan after that.

In the meantime, on July 7, 2017, Debtors' counsel, Grant M. Axon, Esq., sent a letter via certified mail addressed to Vivid Tan, P.O. Box 665, Florence, KY 41042, with a copy sent via certified mail addressed to Andrew W. Kent, Registered Agent, 10649 Bridlepath Lane, Union, KY 41091. The Kentucky Secretary of State's public Online Business Records introduced as Debtors' Exhibit 4 indicate that Vivid Tan is an assumed name for A.W. Kent Business Ventures and Company, LLC, Mr. Kent is Vivid Tan's "Organizer," and Vivid Tan's principal address is the Bridlepath Lane address. The letter advised that Mr. Axon is Debtors' bankruptcy counsel, explained that deducting payments from Debtors' bank account postpetition is a violation of the automatic stay under § 362, and threatened pursuit of legal remedies for the violation if the money debited was not returned and collection activities continued. Debtors' Exhibit 4 provides U.S. Postal Service tracking information indicating that the copy sent to Mr. Kent was delivered on July 10, 2017.

Debtors filed the Motion on July 10, 2017, and served it that day via regular U.S. mail addressed to Vivid Tan, P.O. Box 665, Florence, KY 41042-0665. On August 2, 2017, the Court entered an Order setting the Motion for hearing on August 21, 2017. Debtors served that Order on that same day via both certified U.S. mail and regular U.S. mail addressed to:

3

(a) Vivid Tan, 345 Crossroads Boulevard, Cold Springs, KY 41076; and (b) Andrew W. Kent, Registered Agent for Vivid Tan, 10649 Bridlepath Lane, Union, KY 41091.

At the August 21, 2017 hearing, Debtors and their counsel, Mr. Axon, appeared. No one appeared on behalf of Vivid Tan. The Court entered an Order on August 22, 2017, scheduling the Motion for evidentiary hearing on September 12, 2017, and setting pre-hearing filing deadlines. Debtors served that Order on August 23, 2017, via both certified U.S. mail and regular U.S. mail addressed to: (a) Vivid Tan, 345 Crossroads Boulevard, Cold Springs, KY 41076; and (b) Andrew W. Kent, Registered Agent for Vivid Tan, 10649 Bridlepath Lane, Union, KY 41091.

Debtors timely filed their hearing brief, exhibits, and witness list. Debtors also filed proposed stipulations, along with a pleading stating that Debtors sent the stipulations to Vivid Tan on August 23, 2017, but received no response. Vivid Tan did not comply with any pre-hearing deadlines. The Court held the evidentiary hearing on September 12, 2017, at which Debtors and Mr. Axon appeared and Ms. Witham testified. Again, Vivid Tan did not appear, and it has not filed anything in Debtors' bankruptcy case to date.

Debtors incurred mileage expenses of $44.10 for attending each of the August 21, 2017 and September 12, 2017 hearings, for a total mileage expense of $88.20.[2] Ms. Witham missed work to attend the August 21, 2017 hearing, which resulted in lost wages of $240.00. Debtors incurred a total of $5,812.50 in attorney's fees and $246.74 in costs related to this matter, for a total of $6,059.24 evidenced by Mr. Axon's Affidavit [ECF No. 44].

---

[2] Debtors sought compensation for mileage expenses calculated at a rate of $0.75 per mile without explaining why that rate is appropriate. Because the Motion is uncontested and the requested mileage expense is *de minimis*, the Court will use Debtors' requested rate.

## ANALYSIS

The Court has jurisdiction over this matter. 28 U.S.C. § 1334(b). Venue is proper in this District. 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), and this Court is authorized to issue a final order adjudicating this matter.

### I.    Vivid Tan Violated the Automatic Stay.

"[T]he filing of a [bankruptcy] petition creates a broad automatic stay protecting the property of the debtor" under § 362(a). *In re Smith*, 876 F.2d 524, 525 (6th Cir. 1989). "The automatic stay extends to virtually all formal and informal actions against property of the bankruptcy estate" and "is intended to 'stop[ ] all collection efforts, all harassment, and all foreclosure actions.'" *Id.* (quoting citing S. REP. NO. 989, 95TH CONG., 2D SESS. 54). Specifically, the automatic stay enjoins a creditor from taking action "to recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(1). "It is elementary that the automatic stay comes into existence automatically and immediately upon the filing of a petition in bankruptcy, and its purpose is to provide the debtor a breathing spell from collection efforts and to shield individual creditors from the effects of a race to the courthouse, thereby promoting the equal treatment of creditors." *Webb Mtn, LLC v. Exec. Realty P'ship, L.P., et al. (In re Webb Mtn, LLC)*, 414 B.R. 308, 335 (Bankr. E.D. Tenn. 2009) (internal quotation marks and citations omitted).

Section 362(k)(1) provides a remedy to debtors who are subjected to a creditor's willful stay violation: "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). As the parties seeking damages under § 362(k)(1), Debtors bear the burden to prove "by a preponderance of the

5

evidence that the stay imposed under § 362 was violated, that the violation was committed willfully and that [Debtors were] injured by the violation." *Grine v. Chambers (In re Grine)*, 439 B.R. 461, 466 (Bankr. N.D. Ohio 2010) (citing *In re Skeen*, 248 B.R. 312, 316 (Bankr. E.D. Tenn. 2000)). A "willful violation" does not require proof of a specific intent to violate the stay. Rather, "[a] violation of the automatic stay can be willful when the creditor knew of the stay and violated the stay by an intentional act." *TranSouth Financial Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 687 (B.A.P. 6th Cir. 1999) (citations omitted). "Indeed, 'where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate.'" *Grine*, 439 B.R. at 466 (quoting *Fleet Mortg. Group, Inc. v. Kaneb (In re Kaneb)*, 196 F.3d 265, 269 (1st Cir. 1999)). Conversely, even if it is questionable whether a creditor knew of a debtor's bankruptcy at the time of the alleged stay violation, if the creditor "thereafter acquire[s] actual knowledge of the debtor['s] bankruptcy and fail[s] to take steps to undo and correct the . . . result," that constitutes willful conduct by the creditor. *Bunch v. NCNB South Carolina (In re Bunch)*, 119 B.R. 77, 80 (Bankr. D.S.C. 1990); *see also In re Pulliam*, 262 B.R. 539, 543 (Bankr. D. Kan. 2001) ("A creditor who has initiated collection efforts without knowledge of a bankruptcy petition has an affirmative duty to restore the *status quo* without the debtor having to seek relief from the Bankruptcy Court.") (citing *In re Miller*, 10 B.R. 778, 780 (Bankr. D. Md. 1981), *aff'd* 22 B.R. 479 (D. Md. 1982)).

There can be no doubt that Vivid Tan violated the automatic stay in Debtors' bankruptcy case by initiating two postpetition debits of $81.95 each from Debtors' bank account on account of its prepetition claim or that such violation was "willful" within the meaning of § 362(k)(1). Two notices of Debtors' bankruptcy were mailed to Vivid Tan six weeks prior to the date that it debited Debtors' account. Even if Vivid Tan did not receive those notices, it certainly received

6

notice when Ms. Witham spoke with its store manager on July 6, 2017, when its agent received a certified letter from Mr. Axon on July 10, 2017, and when Ms. Witham spoke with its corporate office on July 20, 2017. It received additional notice via the Motion and the two Orders setting two hearings on it. Despite these multiple notices, Vivid Tan refused to rectify its stay violation by refunding the postpetition debits and, according to Ms. Witham, indicated an intention to continue debiting Debtors' account as long as she owed money. Considering the foregoing, Debtors satisfied their burden to prove that Vivid Tan willfully violated the automatic stay.

### II.     **Debtors are Entitled to Damages as a Result of Vivid Tan's Stay Violation.**

#### A.     **Debtors are Entitled to Actual Damages.**

"Once a court determines that a party has willfully violated the automatic stay, the court is required by § 362(k)(1) to impose sanctions in an amount equal to the [d]ebtor's actual damages." *In re Webb*, 472 B.R. 665 (B.A.P. 6th Cir. Apr. 9, 2012) (unpublished table decision), *available at* 2012 WL 2329051, at *17; *accord Henderson v. Auto Barn Atlanta, Inc., et al. (In re Henderson)*, No. 09-5114, 2011 WL 1838777, at *3 (Bankr. E.D. Ky. May 13, 2011) ("On a finding of a willful violation of the stay, the language of § 362(k)(1) *requires* recovery of actual damages, inclusive of costs and attorneys' fees.") (emphasis in original). "An individual seeking damages under § 362(k) must prove, by a preponderance of the evidence, that damages were 'proximately caused by and reasonably incurred as a result of the violation of the automatic stay.'" *In re Baer*, No. 11-8062, 2012 WL 2368698, at *10 (B.A.P. 6th Cir. June 22, 2012) (quoting *Grine*, 439 B.R. at 471). To that end, "[a] debtor must be able to demonstrate the amount of damages incurred with a reasonable degree of certainty and must support this claim with evidence." *Id.* (citing, *inter alia*, *In re Perrin*, 361 B.R. 853 (B.A.P. 6th Cir. 2007)).

7

Debtors seek actual damages of $163.90 for Vivid Tan's two postpetition debits of their bank account, $240.00 in lost wages, and $88.20 in mileage expenses. The two unauthorized postpetition debits undoubtedly injured Debtors by violating their rights under the Bankruptcy Code and depriving them of the debited funds. Ms. Witham's lost wages and Debtors' mileage expenses were proximately caused by and reasonably incurred as a result of Vivid Tan's stay violation. Debtors presented evidence supporting each of these injuries and satisfied their burden to prove them.

Debtors also seek an award of attorney's fees and costs as actual damages. Section 362(k)(1) does not specify a standard by which attorney's fees and costs are to be evaluated, but it is generally accepted that "fees must be reasonable" and "should bear a reasonable relationship to the amount in controversy." *In re Russell*, 441 B.R. 859, 863 (Bankr. N.D. Ohio 2010) (citations omitted). "Those fees can include fees incurred out of court, as when a debtor retains an attorney to call or write a creditor to demand that it end its actions violating the stay." *Springer v. RNBJ RTO LLC (In re Springer)*, No. 16-3007, 2017 WL 3575859, at *5 (Bankr. W.D. Ky. Aug. 16, 2017). "If those efforts fail, a debtor can also incur attorney's fees in court by pursuing an action to end a stay violation and to recover damages." *Id.* (citing *In re Schwartz-Tallard*, 803 F.3d 1095, 1099 (9th Cir. 2015)). However, Debtors must be mindful of their duty to mitigate their damages because "claims for fees incurred in the prosecution of an unnecessary motions [*sic*] are not recoverable." *Id.* at *3 (citing *Grine*, 439 B.R. at 471).

Debtors seek an award of attorney's fees and costs totaling $6,059.24. "To determine the reasonableness of attorneys' fees, the Sixth Circuit typically uses the 'lodestar' method, or the multiplication of the reasonable number of hours billed by a reasonable billing rate." *Henderson*, 2011 WL 1838777, at *3 (citing *Grine*, 439 B.R. at 472); *accord*, *Springer*, 2017

8

WL 3575859, at *5. The court then considers multiple factors including the following to determine whether that amount should be adjusted up or down to achieve a reasonable result:

> . . . (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service property [*sic*]; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Henderson*, 2011 WL 1838777 at *3 (citation omitted). "The fee applicant is charged with submitting evidence to support the hours worked and the rates claimed." *Id.*

Mr. Axon filed an Affidavit [ECF No. 44] evidencing his fees and expenses incurred on Debtors' behalf. The invoice attached to Mr. Axon's Affidavit indicates that he spent 23.25 hours billed at $250.00 per hour prosecuting Debtors' stay violation claim from July 7, 2017, through September 12, 2017, exclusive of services related to the filing of Debtors' bankruptcy or routine administration of their case. He also incurred costs totaling $246.74 for expenses including mileage, copies, and postage. As a result, Debtors are seeking actual damages of $5,812.50 for attorney's fees and $246.74 for costs, for a total of $6,059.24.

After considering the record in this case, the Court finds that Debtors appropriately attempted to mitigate their damages. Debtors took multiple steps to avoid this contested matter. Vivid Tan could have attempted to resolve the matter with Debtors out of court, or it could have appeared in this case and contested Debtors' arguments. It chose to do neither and left Debtors with no choice but to prosecute the Motion. The Court finds that the time that Mr. Axon spent on this matter and his hourly rate are reasonable, and the "lodestar" amount of Mr. Axon's fees is $5,812.50. The $246.74 in expenses that Mr. Axon incurred are likewise reasonable. Though the amount of Vivid Tan's two unauthorized postpetition debits is small in comparison to Mr.

Axon's fees and expenses, Vivid Tan's stated intention to continue violating the stay by debiting Debtors' account postpetition and its failure to respond to any communications or Court orders warrant actions by counsel and support the reasonableness of the fees for Mr. Axon's services.

Debtors satisfied their burden to prove that they sustained actual damages that were proximately caused by and reasonably incurred as a result of Vivid Tan's stay violation. The Court will award Debtors actual damages totaling $6,551.34, comprised of: $163.90 for Vivid Tan's postpetition debits of Debtors' bank account; $240.00 in lost wages; $88.20 in mileage expenses; and $6,059.24 in attorney's fees and costs.

### B. **Debtors are Entitled to Punitive Damages.**

In addition to actual damages, a court has the discretion to award punitive damages under § 362(k)(1) if it determines that a creditor willfully violated the automatic stay. Here, Debtors seek punitive damages in such amount as the Court deems appropriate. "A party seeking punitive damages under § 362(k) must demonstrate that the creditor's conduct was 'egregious, vindictive, or intentionally malicious.'" *Baer*, 2012 WL 2368698 at *10 (quoting *In re Bivens*, 324 B.R. 39, 42 (Bankr. N.D. Ohio 2004)). "[A] high level of culpable intent is not necessarily a pre-requisite to an award of punitive damages." *Henderson*, 2011 WL 1838777, at *8 (citing *Bivens*, 324 B.R. at 42). "While proof of an overt wrongful intent is not required, it must be shown that the creditor acted in bad faith or otherwise undertook its actions in reckless disregard of the law." *Springer*, 2017 WL 3575859, at *6 (citing *Baer*, 2012 WL 2368698 at *10).

Vivid Tan had notice of Debtors' bankruptcy filing and notice that its postpetition debits of Debtors' account were violations of the automatic stay. Vivid Tan had multiple opportunities to either rectify its violation or contest Debtors' claim that a violation had occurred, but it chose not to do so. Instead, Vivid Tan recklessly disregarded Debtors' rights under § 362 by initiating

the debits and thereafter refusing to return the improperly debited funds. Vivid Tan's reckless disregard of the law is further evidenced by its failure to appear in this matter. Vivid Tan's actual notice of this bankruptcy belies any suggestion that it has not recklessly disregarded the law. An award of punitive damages is warranted. *See, e.g. Preferred Props., Inc. v. Indian River Estates, Inc.*, 276 F.3d 790, 800 (6th Cir. 2002) ("[T]he purpose of a punitive damages award is to deter future wrongdoing as well as to punish wrongdoers.") (citation omitted).

Courts have considered several factors when determining the appropriate amount of a punitive damages award, including, but not limited to:

> . . . (1) the nature of the creditor's conduct; (2) the nature and extent of harm to the debtor; (3) the creditor's ability to pay; (4) the level of sophistication of the creditor; (5) the creditor's motives; and (6) any provocation by the debtor.

*Henderson*, 2011 WL 1838777, at *9 (citing *Bivens*, 324 B.R. at 44). Vivid Tan not only violated the automatic stay without provocation from Debtors, its agents informed Ms. Witham that it intended to continue debiting Debtors' account regardless of the stay, and it refused to participate in this case. For these reasons, the Court finds that the imposition of $3,500.00 in punitive damages is appropriate. This amount is proportionate to the actual damages awarded and is sufficient to deter future wrongdoing.

### C. Contempt is Not a Proper Remedy for a Stay Violation.

Debtors' Motion seeks to require Vivid Tan to "show cause as to why it should not be held in contempt for willfully violating the automatic stay," but contempt is not the proper remedy for such a violation. Section 362(k) provides Debtors an express right of action to address willful stay violations and contains a specific statutory remedy. *See Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422 (6th Cir. 2000) (recognizing that § 362 contains an express right of action in § 362(h) for violation of the stay (recodified to § 362(k) in 2005), unlike the

discharge provisions of § 524, which may be enforced by contempt and include no private right of action). Accordingly, in this Order, the Court is finding that that Vivid Tan willfully violated the automatic stay under § 362(k) and awarding damages as specifically authorized by that statute, not holding Vivid Tan in contempt.

### **CONCLUSION**

Based on the foregoing, the Motion will be granted, and Debtors will be awarded damages as a result of Vivid Tan's willful stay violation totaling $10,051.34, consisting of actual damages of $163.90 in unauthorized postpetition debits, $240.00 in lost wages, $88.20 in mileage expenses, and $6,059.24 in attorney's fees and costs, and punitive damages of $3,500.00. A final order in conformity herewith shall be entered.

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
Dated: Thursday, October 12, 2017
(tnw)